# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ARTHUR HAIRSTON SR., | : | CIVIL NO. 1:12-CV-00845 |
| Plaintiff, | : | |
| | : | (Judge Jones) |
| v. | : | |
| | : | |
| UNITED STATES F.B.O.P., *et al.*, | : | |
| | : | (Magistrate Judge Schwab) |
| Defendants. | : | |

## **REPORT AND RECOMMENDATION**

Before the Court is a motion for summary judgment filed by the remaining defendants in this civil rights matter. For the reasons set forth herein, I recommend that the motion be granted.

## I.  Background.

**A. Procedural History.**

On May 7, 2012, the plaintiff, Arthur Hairston Sr. ("Hairston"), an inmate formerly imprisoned at the United States satellite prison camp in Lewisburg, Pennsylvania ("USP Lewisburg"), initiated this action by filing a complaint in accord with *Bivens*.[1] Doc. 1. In the complaint, Hairston named the following 11

---

[1] *Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). *Bivens* stands for the proposition that "a citizen suffering a compensable injury to a constitutionally protected interest could invoke the general federal-question jurisdiction of the district courts

defendants: (1) the Federal Bureau of Prisons ("BOP"); (2) Harrell Watts, the National Inmate Appeal Administrator; (3) J.L. Norwood, a Regional Director; (4) W. Scism, the former Warden at Allenwood Low Security Correctional Institution ("LSCI Allenwood"); (5) B.A. Bledsoe, Warden at USP Lewisburg; (6) S. Gosa, a Physician's Assistant at USP Lewisburg; (7) D. Hollenbach, a Unit Manager at USP Lewisburg; (8) M. Nicholas, a Case Manager at USP Lewisburg; (9) G. Ulsh, a Correctional Counselor at USP Lewisburg; (10) H. Hunsinger, a Correctional Officer at USP Lewisburg; and (11) D. Kiefaber, a Correctional Systems Officer at USP Lewisburg. *Id.* at 2-3. Generally, Hairston claims that the defendants violated his rights under the Eighth Amendment to the United States Constitution, in connection with actions taken by prison staff at the time of his intake screening upon arriving at USP Lewisburg. *See Doc.* 1. Hairston also filed a motion to proceed *in forma pauperis*, (*Doc.* 6) which was granted on May 22, 2012. *Doc.* 8.

After waiving service, the defendants filed a motion to dismiss and for summary judgment. *Doc.* 13. With regard to the summary judgment portion of that motion, the defendants argued that summary judgment was warranted based solely on Hairston's failure to exhaust his administrative remedies. *Doc.* 17 at 13-15. Once the motion to dismiss and for summary judgment was ripe for review, Magistrate Judge Carlson issued a report and recommendation granting it in part

---

to obtain an award of monetary damages against the responsible federal official." *Butz v. Economou*, 438 U.S. 478, 504, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978).

and denying it in part. *Doc.* 29. Specifically, Magistrate Judge Carlson recommended that: (1) the claims against the BOP be dismissed; (2) the claims against the defendants in their official capacities be dismissed because sovereign immunity barred those claims; (3) the claims against the supervisory defendants based on their handling of Hairston's administrative remedies be dismissed; and (4) there was a genuine dispute of fact about whether the administrative remedy process was available to Hairston. *Doc.* 29 at 2, 27. On November 5, 2012, the Court adopted Judge Carlson's report and recommendation in its entirety and the case was remanded for further pretrial management. *Doc.* 38. As a result, the following defendants, sued in their individual capacity, remain: (1) Gosa; (2) Hollenbach; (3) Nicholas; (4) Ulsh; (5) Hunsinger; and (6) Kiefaber. On December 3, 2012, the case was verbally referred to the undersigned.

Subsequently, on January 18, 2013, the remaining defendants filed a motion for summary judgment. *Doc.* 45. Within 14 days, as required by Local Rule 7.5, the defendants filed their brief in support, statement of facts, and other documents. *Docs.* 47, 48, & 49. Hairston then filed a timely brief in opposition, a counterstatement of facts, and his own affidavit that is rife with conclusory allegations and self-serving statements. *Docs.* 50, 51, & 52. Thereafter, the defendants filed a reply brief. *Doc.* 55. The motion, having been fully briefed and argued by the parties, is ripe for disposition on the merits.

**B. Facts.**[2]

On May 20, 2010, at approximately 12:47 p.m., Hairston arrived to the camp component at USP Lewisburg. *Doc.* 48 at ¶ 1. Upon arrival, Kiefaber conducted the initial processing of Hairston in the Receiving and Discharge area of the camp. *Id.* at ¶ 2. During the initial processing phase, Hairston was strip searched, fingerprinted and photographed for inmate identification, and provided with institutional clothing. *Id.* at ¶ 3. Further, Hairston acted belligerently. *Id.* at ¶ 4.

After initial processing, Hairston was seen by medical staff for an intake interview, and he continued acting belligerently. *Id.* at ¶¶ 5, 11. Neither Kiefaber, Hunsinger, Ulsh, Hollenbach, nor Nicholas were a part of the prison's medical staff. *Id.* at ¶ 6. Instead, Gosa, a physician's assistant, performed the medical portion of Hairston's intake screening. *Id.* at ¶ 7. At this stage, inmates are

---

[2] When deciding a motion for summary judgment, the Court will rely on the facts enumerated in the parties' respective statement of material facts and counter-statement of material facts, and cite to the record when those facts are genuinely disputed. However, in the instant case, Hairston has not filed a proper counterstatement of material facts by failing to reference parts of the record that support his denials. Therefore, the Court will consider the defendants' statement of material facts to be uncontested, with the exception of paragraphs 21, 51, and 54, which Hairston properly addressed. *See* M.D. Pa. L.R. 56.1*; Miller v. Ashcroft*, 76 F. App'x 457, 460 (3d Cir. 2003) (treating facts as uncontested due to plaintiff's failure to file a timely counter-statement of material facts). Moreover, this is not an arbitrary decision, as Hairston was provided with notice of his briefing duties and responsibilities. *See Doc.* 49; *see also Bowman v. Mazur*, 435 F. App'x 82, 84 (3d Cir. 2011) (reiterating that it is permissible for a local rule to deem admitted the movant's statement of facts when the nonmoving party fails to properly respond, so long as the District Court also conducts a merits review).

interviewed in order to determine if there are any medical reasons for housing the inmate away from the general population or for restricting temporary work assignments. *Id.* at ¶ 8. A comprehensive physical examination is performed at a later date. *Id.* at ¶ 9. According to his medical history, Hairston had been diagnosed with diabetes, and he complained of persistent pain following a back surgery that had taken place at some point in the past. *See generally*, *Doc.* 48-1 at 47-48. After meeting with Hairston, Gosa wrote him a medical pass for a lower bunk based on his medical history. *Id.* at ¶ 12; *but see* ¶ 31.

Next, following his medical interview, Hairston was seen by a member of his unit team for a social interview. Hairston's unit team consisted of Hollenbach, Nicholas, and Ulsh. *Id.* at ¶¶ 13, 14, 15, 17, 19. In Hairston's case, though, Hollenbach did not directly participate in the intake process, and neither Ulsh nor Nicholas recalls interviewing Hairston. *Id.* at ¶¶ 16, 18, 20.

After the social interview was completed, Hairston was given his cell and bunk assignment. In general, Hunsinger made the assignments based on the availability of beds. *Id.* at ¶ 23. Hollenbach, Nicholas, and Ulsh were not involved with assigning cells to inmates. *Id.* at 21. If an inmate completed the intake process and the medical staff determined that an inmate required a bottom bunk, Hunsinger would change the assignment to meet the staff's recommendation. *Id.* at ¶ 24. Regarding Hairston's bunk assignment, however, Hunsinger does not

recall being contacted by anyone regarding a recommendation that Hairston be assigned to a lower bunk. *Id.* at ¶ 25. As a result, Hariston was assigned to an upper bunk, and his assignment was turned over to Kiefaber. *See id.* at ¶¶ 26, 28.

Thereafter, at approximately 2:20 p.m., Kiefaber handed Hairston his bunk assignment. *Id.* at ¶ 28. When Hairston saw that he was assigned to an upper bunk, he acted disrespectfully, refused to leave the area, and insisted that he had a lower bunk assignment. *Id.* at ¶¶ 29, 30. Based on Hairston's assertions that he required a lower bunk assignment, Kiefaber asked him to produce a lower bunk slip, but he could not. *Id.* at ¶ 31. Because Hairston did not comply and could not produce a lower bunk slip, Hairston was taken to the Receiving and Discharge holding cell. *Id.* at ¶ 32. On the way to the holding cell, Kiefaber admitted that he placed his hand on Hairston's neck, but denied doing anything more. *See Doc.* 48 at ¶¶ 32, 33. Moreover, while he remained in the holding cell, Hairston told Kiefaber that he was lucky that he did not do anything to him (Hairston). *Id.* at ¶ 33.

At approximately 2:35 p.m., Kiefaber issued Hairston an incident report for refusing a program assignment and insolence towards a staff member. *Id.* at ¶ 34. The incident report was delivered to Hairston at approximately 2:53 p.m. *Id.* at ¶ 35. Afterwards, Kiefaber had no other involvement with Hairston. *Id.* at ¶ 36.

Within a quick time frame, a Unit Discipline Committee hearing was held, and it was immediately determined that the incident should be referred to the discipline hearing officer for disposition. *Id.* at ¶¶ 37, 38. Ulsh participated at the hearing, but had no further involvement with Hairston. *Id.* at 37. Thereafter, at approximately 3:15 p.m., Nicholas signed an administrative detention order for Hairston to be transferred to LSCI Allenwood and be held in the Special Housing Unit pending an investigation of a violation of BOP regulations. *Id.* at ¶ 40. Finally, at about 3:23 p.m., Hairston was transported to LSCI Allenwood, which is approximately 15 minutes away from USP Lewisburg. *Id.* at ¶¶ 42, 43.

A month later, on June 17, 2010, the disciplinary hearing officer held a hearing on the charges set forth in the incident report and found Hairston guilty of being insolent towards prison staff. *Id.* at ¶¶ 45, 46. As a result, Hairston was designated to LSCI Allenwood. *Id.* at ¶ 50. While at LSCI Allenwood, Hairston made formal allegations against Kiefaber, claiming that Kiefaber grabbed him by the neck and pushed him down a hallway. *Id.* at ¶ 51. The allegations, as mentioned, were investigated by the Office of Internal Affairs, and the investigation revealed no evidence to substantiate any of Hairston's claims. *Id.* at ¶¶ 52, 54.

## II. **Standard of Review – Summary Judgment.**

The defendants move for judgment pursuant to Rule 56(a) of the Federal

Rules of Civil Procedure, which provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). Through summary adjudication a court is empowered to dispose of those claims that do not present a "genuine dispute as to any material fact," Fed.R.Civ.P. 56(a), and for which a trial would be "an empty and unnecessary formality." *Univac Dental Co. v. Dentsply Int'l, Inc.,* No. 07–0493, 2010 U.S. Dist. LEXIS 31615, at *4, 2009 WL 6315330 (M.D.Pa. Mar. 31, 2010). The substantive law identifies which facts are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A dispute about a material fact is genuine only if there is a sufficient evidentiary basis that would allow a reasonable fact finder to return a verdict for the non-moving party. *Id.* at 248–49.

The moving party has the initial burden of identifying evidence that it believes shows an absence of a genuine issue of material fact. *Conoshenti v. Pub. Serv. Elec. & Gas Co.,* 364 F.3d 135, 145–46 (3d Cir. 2004). Once the moving party has shown that there is an absence of evidence to support the nonmoving party's claims, "the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal

memoranda, or oral argument." *Berckeley Inv. Group. Ltd. v. Colkitt,* 455 F.3d 195, 201 (3d Cir. 2006); *accord Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial," summary judgment is appropriate. *Celotex,* 477 U.S. at 322. Summary judgment is also appropriate if the non-moving party provides merely colorable, conclusory, or speculative evidence. *Anderson,* 477 U.S. at 249. There must be more than a scintilla of evidence supporting the nonmoving party and more than some metaphysical doubt as to the material facts. *Id.* at 252; *see also, Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). In making this determination, the court must "consider all evidence in the light most favorable to the party opposing the motion." *A.W. v. Jersey City Pub. Schs.,* 486 F.3d 791, 794 (3d Cir. 2007).

Moreover, a party who seeks to resist a summary judgment motion by citing to disputed material issues of fact must show by competent evidence that such factual disputes exist. Further, "only evidence which is admissible at trial may be considered in ruling on a motion for summary judgment." *Countryside Oil Co., Inc. v. Travelers Ins. Co.,* 928 F.Supp. 474, 482 (D.N.J. 1995). This rule applies with particular force to parties who attempt to rely upon hearsay statements to

9

establish material issues of fact, which would preclude summary judgment. With respect to such claims, it is well-settled that: "In this circuit, hearsay statements can be considered on a motion for summary judgment [only] if they are capable of admission at trial." *Shelton v. University of Medicine & Dentistry of N.J.,* 223 F.3d 220, 223, n. 2 (3d Cir. 2000), citing *Stelwagon Mfg. v. Tarmac Roofing Sys., Inc.,* 63 F.3d 1267, 1275, n. 17 (3d Cir. 1995). In this regard it has been aptly observed that:

> It is clear that when considering a motion for summary judgment, a court may only consider evidence which is admissible at trial, and that a party can not rely on hearsay evidence when opposing a motion for summary judgment. *See Buttice v. G.D. Searle & Co.,* 938 F.Supp. 561 (E.D.Mo. 1996). Additionally, a party must respond to a hearsay objection by demonstrating that the material would be admissible at trial under an exception to hearsay rule, or that the material is not hearsay. *See Burgess v. Allstate Ins. Co.,* 334 F.Supp.2d 1351 (N.D.Ga. 2003). The mere possibility that a hearsay statement will be admissible at trial, does not permit its consideration at the summary judgment stage. *Henry v. Colonial Baking Co. of Dothan,* 952 F.Supp. 744 (M.D.Ala. 1996).

*Bouriez v. Carnegie Mellon Univ.,* No. 02–2104, 2005 WL 2106582,* 9 (W.D.Pa. Aug.26, 2005). Thus, a party may not rely upon inadmissible hearsay assertions to avoid summary judgment. Therefore, where a party simply presents inadmissible hearsay declarations in an attempt to establish a disputed material issue of fact, courts have typically rebuffed these efforts and held instead that summary judgment is appropriate. *See, e.g., Synthes v. Globus Medical, Inc.,* No. 04–1235,

2007 WL 2043184 (E.D.Pa. July 12, 2007); *Bouriez v. Carnegie Mellon Univ.,* No. 02–2104, 2005 WL 2106582,* 9 (W.D.Pa. Aug.26, 2005); *Carpet Group Int'l v. Oriental Rug Importers Assoc., Inc.,* 256 F.Supp.2d 249 (D.N.J. 2003). Similarly, it is well-settled that: "[o]ne cannot create an issue of fact merely by ... denying averments ... without producing any supporting evidence of the denials." *Thimons v. PNC Bank, NA,* 254 F.App'x 896, 899 (3d Cir. 2007) (citation omitted). Thus, "[w]hen a motion for summary judgment is made and supported ..., an adverse party may not rest upon mere allegations or denial." *Fireman's Ins. Co. Of Newark NJ v. DuFresne,* 676 F.2d 965, 968 (3d Cir. 1982), *see Sunshine Books, Ltd. v. Temple University,* 697 F.2d 90, 96 (3d Cir. 1982). "[A] mere denial is insufficient to raise a disputed issue of fact, and an unsubstantiated doubt as to the veracity of the opposing affidavit is also not sufficient." *Lockhart v. Hoenstine,* 411 F.2d 455, 458 (3d Cir. 1969). Furthermore, "a party resisting a [Rule 56] motion cannot expect to rely merely upon bare assertions, conclusory allegations or suspicions." *Gans v. Mundy,* 762 F.2d 338, 341 (3d Cir. 1985) (citing *Ness v. Marshall,* 660 F.2d 517, 519 (3d Cir. 1981)).

III. **Discussion.**

Hairston alleges that the remaining defendants acted with deliberate indifference to his health and safety during his initial processing at USP Lewisburg, in violation of the Eighth Amendment. Hairston also alleges that

11

Kiefaber used excessive force in violation of the Eighth Amendment. These claims will be addressed *seriatim*.

**A. Excessive Force.**

The Eighth Amendment explicitly prohibits cruel and unusual punishment, which includes the unnecessary and wanton infliction of pain by prison officials. U.S. CONST. amend. VIII; *see also Rhodes v. Chapman*, 452 U.S. 337, 345-46, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981); *Whitley v. Albers*, 475 U.S. 312, 319, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986). More precisely, among other things, the Eighth Amendment restrains prison officials from applying excessive force against inmates. *See Hudson v. McMillian*, 503 U.S. 1, 5, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992). In this light, whenever prison officials are accused of using excessive force in violation of the Eighth Amendment the inquiry "is whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 7.

To make this inquiry, the following factors are relevant: (1) the extent of the injury suffered; (2) the need for the application of the force; (3) the relationship between that need and the amount of force used; (4) the threat reasonably perceived by the official; and (5) any efforts made to temper the severity of a forceful response. *Id.* Moreover, although the extent of injury suffered is a consideration that may be relevant to determining if the force could have plausibly

been thought necessary, to prove an Eighth Amendment excessive use of force claim an inmate does not need to show that he suffered a serious injury. *Id.*

Additionally, in *Hudson, supra,* the Supreme Court noted that not every malevolent touch by a prison guard gives rise to an Eighth Amendment cause of action: "The Eighth Amendment's prohibition of 'cruel and unusual' punishment necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.'" *Id.* at 9-10. There, Hudson testified that he was punched in the mouth, eyes, chest and stomach and that he was kicked and punched from behind. *Id.* at 4. The Court stated that the blows directed at Hudson were not *de minimis* for Eighth Amendment purposes. *Id.* at 10.

In this case, as mentioned, *supra,* Hairston's responsive statement of material facts is insufficient to create a genuine issue of material fact because it fails to comply with Local Rule 56.1. Hairston failed to comply with the Local Rules by failing to cite to specific portions of the record in support of his responsive statement of facts. Such a failure justifies the Court in ignoring his denials in his responsive statement of material facts and deeming that he admitted those very facts that he sought to deny. *See, e.g.*, *Bronson v. White*, NO. 1:05–CV2150, 2007 WL 3033865, at *1 n. 1 (M.D.Pa. Oct.15, 2007) ("Although Plaintiff has denied certain paragraphs of the Defendants' Statement of Material

13

Undisputed Facts, he has not pointed to record evidence to support such denials. Therefore, pursuant to Local Rule 56.1, those material facts are deemed to be admitted."). On this basis alone, given that we can deem the defendants' statements of material facts undisputed, the Court should grant the summary judgment motion since the moving defendants have met their initial summary judgment burden to show no genuine issue of material fact with respect to the use of excessive force, as it was justified and *de minimis* in light of Hairston acting belligerent, disrespectful, and refusing his assignment.

As a result, the defendants' motion for summary judgment with regard to Hairston's excessive force claim against Kiefaber should be granted.

**B. Failure to Properly Screen.**

In this instance, Hairston is adamant that he is not raising an Eighth Amendment claim for denial of medical care. *Doc.* 50 at 9. Instead, Hairston asserts that he is merely claiming that the defendants improperly screened him by ignoring his medical conditions and assigning him to a top bunk, resulting in an attack by Kiefaber. *See Doc.* 1 at ¶¶ 36-37, 41-42, 46-47, 51-52, 56-57, 61-62; *see also Doc.* 50 at 9-10. Thus, according to Hairston, the defendants acted deliberately indifferent to his health and safety. The defendants disagree.

In general, "deliberate indifference" under the Eighth Amendment is a subjective standard whereby the prison official-defendant must actually have

14

known or been aware of the excessive risk to inmate health or safety. *Beers–Capitol*, 256 F.3d at 125. Thus, when "analyzing deliberate indifference, a court must determine whether the prison official 'acted or failed to act despite his knowledge of a substantial risk of serious harm.' *Farmer v. Brennan*, 511 U.S. 825, 841, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). Further, as a corollary, "deliberate indifference 'entails something more than mere negligence.'" *Blackmore v. Kalamazoo County*, 390 F.3d 890, 895-96 (6th Cir. 2004) (quoting *Farmer*, 511 U.S. at 835); *see also Estelle v. Gamble*, 429 U.S. 97, 105–06 (1976).

Here, beginning with the non-medical defendants (i.e. Hollenbach, Nicholas, Ulsh, Hunsinger, and Kiefaber), there is no evidence that they acted with deliberate indifference to Hairston's health and safety during the intake screening process. During that process, only Gosa had actual knowledge of Hairston's medical history. Moreover, even if we were to credit Hairston's denials, namely that he told each of the defendants that he required a lower bunk because of his medical conditions, his claim would still fail as a matter of law. As the defendants point out, non-medical defendants cannot be considered deliberately indifferent for failing to respond to an inmate's medical complaints when the inmate was under the care of a prison's medical staff. *See Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004) ("If a prisoner is under the care of medical experts … a non-medical prison official will generally be justified in believing that the prisoner is in capable

15

hands."). Further, Hairston presses that these defendants should have known about his health status because they had easy access to his medical history through the prison's computer system. *See, e.g.*, Doc. 50 at 5. Unfortunately for Hairston, what the defendants should have known is not part of the standard of review. Rather, the standard involves what the defendants actually knew or were actually aware of, and they were not required to credit his bare assertions since he conducted an interview with, and was under the care of, the medical staff at the prison.[3]

Last, with regard to Gosa, I do not doubt that Gosa met with Hairston, reviewed his medical history, and indicated on Hairston's medical forms that he should be assigned a lower bunk. But, it remains unclear whether Gosa distributed a lower bunk pass to Hairston. Nonetheless, even if Gosa did not actually give Hairston a copy of his medical review sheet or a lower bunk pass, to afford him the opportunity to be assigned to a lower bunk, it is unlikely that reasonable jurors would find that such action constituted deliberate indifference. Rather, his actions sound in negligence, which falls outside the realm of the deliberate indifference standard. *See Blackmore*, *supra*, 390 F.3d at 895-96.

---

[3] I also believe that it is worth repeating here that neither Hollenbach, Nicholas, nor Ulsh were involved with, or responsible for, assigning bunks to inmates. Their conduct, therefore, was very limited. I nevertheless decide not to dismiss them from this action for Hairston's failure "to plead with specificity sufficient allegations," as the defendants suggest (*see Doc.* 47 at 8-11), given that the record warrants dismissal on summary judgment.

The defendants' motion for summary judgment should, therefore, be granted, because none of the defendants acted with deliberate indifference to Hairston's health and safety.

IV. **Recommendation.**

Accordingly, for the foregoing reasons, IT IS RECOMMENDED that:

(1) The defendants' motion for summary judgment (*Doc*. 45) be

**GRANTED**.

The Parties are further placed on notice that pursuant to Local Rule 72.3:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Failure to file timely objections to the foregoing Report and Recommendation may constitute a waiver of any appellate rights.

Submitted this **21st** day of **August, 2013**.

*S/ Susan E. Schwab*
**Susan E. Schwab**
**United States Magistrate Judge**